## Case No. 3,157.

### COOK et al. v. HAMILTON COUNTY COM'RS.

[6 McLean, 112.][1]

Circuit Court, D. Ohio. Oct. Term, 1854.

CONTRACT OF COUNTY COMMISSIONERS — LEGISLATIVE SANCTION — ABROGATION — INSUFFICIENT APPROPRIATION.

1. By the act of 1851 [49 Laws Ohio, 130] the commissioners of Hamilton county were authorized to construct all such suitable buildings for the said county, upon the old court house lot, in Cincinnati. upon such plan and of such materials as to them shall seem proper, under which they made a contract to build a court house which covered the entire lot referred to. In the same contract the contractors agreed to build a jail, on such lot, within certain limits, as the legislature might authorize. Although the law contemplated all the buildings for the county should be placed on the court house lot, yet the contract for building the jail on another lot is not illegal, on the condition expressed.

[Cited in McLean v. Commissioners Hamilton Co., Case No. 8,881.]

2. It is made valid and binding by the sanction of the legislature. The contracts to build the court house and the jail, were separate and distinct, although included in the same instrument. The provision that both buildings should be erected on the same lot, is explained by a subsequent provision, that another lot should be procured for the jail.

3. To justify the party in putting an end to a contract, the contractor must in effect abandon it, or refuse to carry out the plan or act in bad faith, so as to show that he does not or cannot complete it within the time limited.

4. Where there is not in the law an express limitation to the power given to do a certain thing, an inference cannot be made or sustained, which will defeat the object of the law.

5. Where two hundred thousand dollars were appropriated to construct county buildings, which must cost three times that sum, the appropriation imposes no limitation as to expenditures.

Fox & Pugh, for plaintiffs.
Gholson & Groesbeck, for defendants.

OPINION OF THE COURT. This action was upon articles of agreement, dated 15th July, 1851, in which the plaintiffs agree with the defendants to build a court house and jail for Hamilton county, in Cincinnati, on the court house lot, according to the requisition of plans and sections thereof drawn, and specifications thereof made out, from number one to seventeen, by Josiah Rogers, architect, and which are referred to and made a part of the contract. And the plaintiffs agreed to build, in a good and workmanlike manner, agreeably to the said plan, &c. And it was agreed that the said court house building and jail, are to be erected on the old court house lot at the corner of Main and Court streets, now in use, as at present understood; but should the commissioners of Hamilton county, at the next session of the legislature, obtain permission to build the said jail in the rear of, or adjoining the said court house lot, or on any other lot in Cincinnati, east of Main street, west of Broadway, and south of Fourteenth street; then and in that case, the said party of the second part agrees to erect and build said jail in the rear of or adjoining to the said court house, or on any other lot in the above limits, at the same price and without any additional charge. The plans of the buildings are not furnished, but it is admitted that both of them cannot be put on the court house lot. The stipulated price for the court house was the sum $468,732.55, for the jail $226,520.74. Ten thousand dollars

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

were to be advanced on the contract, and the building was to be commenced immediately.

The defendants craved oyer and pleaded: 1. Non est factum. 2. That the plaintiffs did not begin the work and progress, with all reasonable speed, towards the erecting, building and finishing said court house, &c. 3. This plea merely negatives the averment of the declaration, as to the commencement and prosecution of the work; not alleging specially in what particulars the plaintiffs failed. 4. The fourth plea states, that by an act of the general assembly, January 28, 1851 [supra], it was enacted as follows: That Richard H. Cox, John Patton and David A. Black, commissioners of Hamilton county, are hereby authorized to erect all such suitable and necessary public buildings for the said county, upon the place or lot of ground now known as the old court house property, in the city of Cincinnati, upon such plan, and of such materials as to them shall seem proper. The entire act is set out in the plea, and it is averred that the court house lot is 190 feet square, and no more; and that the size of the lot was known to the plaintiffs and defendants to be not of sufficient capacity to admit of the construction of the court house and jail thereon. That at and before the contract was entered into, it was fraudulently agreed between the commissioners and plaintiffs, that only the court house should be constructed on the said lot, without reference to the location of the jail, and that plaintiffs should be secured in the profits in said agreement, for the construction of a jail in another place, when authority should be obtained. And that the agreement, &c., was contrary to the statute aforesaid and in fraud thereof. To the fourth plea a special demurrer was filed. and to the others, except the first one, demurrers were also filed.

The buildings were to be constructed under the direction of Rogers, the architect, who had power to vary the plan and dismiss the plaintiffs. The second plea is defective. It merely negatives the averment in the declaration, without stating facts which show the failure of the plaintiffs. The declaration avers that the work was commenced on the day the agreement bears date. Could an issue be made upon that fact, which would bar the action? Suppose the work was commenced on the second, third or tenth day after the date of the agreement, would such a failure constitute a bar? To bar the action on such ground, it would be essential that notice should be given to the plaintiffs before they were dismissed from the work. This notice was not given, but they went on with the work for three months or more without complaint. This is a sufficient answer to the allegation as to the commencement of the work.

But it is alleged the plaintiffs did not prosecute the work as they were bound by the contract to do. The work was to be done "with all reasonable speed, to be completed by the first of May, 1855." And the plaintiffs were dismissed for not so prosecuting the work.

To constitute a bar to the action on the ground stated, facts must be alleged in the plea which amount to an abandonment of the contract, or, at least, which show the plaintiffs were acting in bad faith, and this too, after notice given, unless the work had been in fact abandoned. It does not appear from the plea, that the superintendent of the work complained of its progress, nor that the defendants did so, until they dismissed the plaintiffs. The progress, as well as the manner of the work, was under the care of the superintendent. He was the agent of the defendants, expressly made so by the contract, and they had no power to vary the contract, in this respect, without the consent of the plaintiffs. At the time of their dismissal, the plaintiffs had more than three years within which to comply with their contract; and who could undertake to determine that the buildings might not be completed within this time? There is no complaint that the plaintiffs did not conform to the directions of the architect; and unless in this respect they had failed, or had abandoned the contract, or had by their misconduct shown bad faith, and a determination not to perform it, the defendants had no power to put an end to it. And if either of these causes existed, it was essential to state the fact in the plea. But the plea contains no such averment, and in the absence of it there can be no justification or excuse for the acts of the defendants, in the dismissal of the plaintiffs from their work. The acts of the defendants, therefore, must be considered as arbitrary and inexcusable. The demurrer to this plea is sustained.

The fourth plea was the one chiefly relied on in the argument. It was contended, first, that the contract was an impracticable one, as the court house and jail could not be placed upon the court house lot, as the court house covered the entire lot; and, second, that the commissioners had no power to build the jail on any other lot. It is admitted that the new buildings, as planned, covered the entire court house lot. The act of 1851, does not specify the court house and jail as the buildings to be erected on the court house lot, but "all such suitable and necessary public buildings for the county." The plan of the buildings was left to the discretion of the commissioners; and the one they adopted would accommodate all the officers' of the county, clerks of the different courts, commissioners, etc., and the different courts. This was certainly a judicious plan, as it carried out the intent of the law, as far as practicable on the space of ground allotted for the county buildings. It was found that it was impracticable to construct, on the same ground, the jail. The contiguity of the courts and the county officers, promoted the public convenience, and facilitated the dispatch of the public business. And in this respect, it was immaterial whether the jail was

on the court house lot or adjacent to it. It is, therefore, clear that the commissioners acted wisely, in adopting the plan for the court house. There is admitted to be some inconsistency in contracting to build the court house and jail on the same ground which was covered by the court house; but the agreement in relation to the structure of the jail is consistent in the latter part of the article, which refers to the procurement of a lot for it, within certain prescribed limits. This gives consistency to the entire agreement. The plans for the court house and jail were distinct, and the price for each was specified in the contract. There was no confusion or uncertainty in the contract. It is, therefore, not an impracticable contract. Whether it be a legal one will be considered. The ground in the argument assumed is, that the contract is void, on the ground that it is impossible. Now, it may be admitted, that in cases where an individual engaged to do an impracticable or impossible thing, the contract is void and cannot be enforced. But to make out this position, the counsel consider the act of 1851 as a part of the agreement; and that both buildings must occupy the same space. As before remarked, the law does not say what kind of buildings, as court house and jail, but "suitable buildings for the county." That every part of the court house contains suitable and necessary buildings for the county, will not be controverted. And as all the suitable buildings for the county could not be constructed on the lot designated, it is not conceived why the jail should not have been constructed on some other lot. It is more conveniently separated from the court house than any other of the county buildings could be. That the jail was intended to be included in the law of 1851, as a suitable and necessary county building, is admitted; still, as all such buildings could not be built on the lot, the commissioners exercised a proper discretion in building the court house on it. It does not come within the class of contracts referred to. The contract may be executed, if it be legal, and, therefore, is not an impossible contract. But is it a legal contract? I think it is. The part which relates to the jail is not an absolute agreement. The jail is to be built according to the plans referred to, and for the price stipulated, if the legislature shall sanction it. This proposes to do nothing against the law or its policy. It is valid, on condition that the legislature shall legalize it. So far, then, from this agreement being against law, it expressly provides that the law-making power shall sanction it. And when this is done, the proceeding is as legal as if the law had authorized the contract.

A case similar in principle to this came before the circuit court in Columbus, P. & I. R. Co. v. Indianapolis & B. R. Co. [Case No. 3,047]. The Ohio Company entered into a contract to have the gauge of their road the same as that of the Indiana road, which would be in violation of the act of Ohio, that required the gauge of all railroads to be of a different width. The court say, "An objection is made to the legality of the contract to build the Ohio part of the road, as the gauge is in violation of the Ohio statute." "To this it is answered, in argument, that the defendants cannot take advantage of the objection, as it is a matter which rests between the state and the complainants, and that the state only can raise this objection." I am not prepared to say that any party who is called upon specifically to execute a contract, may not set up the illegality of that contract as being against an express statute. But the answer to the objection is, "that although the contract was made, it was made with reference to a future execution of its conditions, when the modification of the law of Ohio should be obtained, which removed the objection. And, in fact, it appears that the construction of the road, by laying down the rails, was not commenced until long after the passage of the amended act by the legislature of Ohio. The law, therefore, was not violated under the contract, nor was it intended to be violated."

The plea in bar is defective, and consequently the demurrer to it is sustained.

But there is a fifth plea, on which one of the counsel in defense principally relies. It is as follows: "That at the time of making the contract it was agreed that the commissioners should, under the provisions of the above act, sell and negotiate bonds to a large amount, to wit, the sum of two hundred thousand dollars, to make the payments under the agreements. That no other means existed or could be legally used in payment. And defendants aver the agreement was entered into without any reference to said bonds, with intent and purpose as a shift and device to violate and defeat the said act, and evade the restrictions thereof, whereby the agreement is void in law." To this plea a special demurrer was filed, assigning causes of demurrer: 1. That the plea is double and argumentative. 2. That in effect it is the general issue. 3. That it is not capable of being traversed or tried. The statements in the plea are not very explicit, but its object seems to be, to allege that the agreement is void, because the limitation of the act of 1851 was disregarded. There is no express limitation in this regard, nor can one be implied, unless it be that two hundred thousand dollars only were appropriated.

In all public works, either by the federal or state governments, it is not usual to appropriate, when the work will require several years for its completion, more than a small part of the necessary expenditure. Any other course, especially where the money must be borrowed, would be a wasteful expenditure. By the act, the commissioners were authorized to "erect all such suitable and necessary public buildings for the said county, etc., of such materials and upon such

plan, as to them shall seem proper." From this provision it is clear that the buildings were to be constructed under the discretion of the commissioners, which is inconsistent with the supposition that they were to be limited in their expenditure to two hundred thousand dollars. Every practical man must see that the buildings required to be constructed would cost more than three times that sum. In the absence of any express limitation, so unreasonable an inference as would defeat the object of the law, cannot be made nor sustained. It is insisted that a limitation necessarily arises from the limited powers of the commissioners, to impose a tax on the people of the county to meet the expenditure incurred by them. These limitations operate on ordinary expenditures, and a tax must be imposed by the commissioners to meet the expenditures. But the question of the legality of the contract raised in this case, is to be considered under the act of 1851, which authorized the contract; and it would seem from its provisions, the commissioners, in making this contract, did not exceed their powers. The act is under the special law, and not under any general provisions in the statutes, regulating the general duties of the commissioners. The demurrer to this plea is, therefore, sustained.

After the judgment of the court was given, it was agreed by the counsel on both sides, that they would go to a trial of this case on the general issue, and that this last point should be considered as open for examination under the general issue.

[NOTE. On the trial the plaintiffs secured a judgment for $45,000. Case No. 3,158.]