## Case No. 3,158.

### COOK et al. v. HAMILTON COUNTY COM'RS.

[6 McLean, 612.]¹

Circuit Court, D. Ohio. Oct. Term, 1855.

CONTRACT OF COUNTY COMMISSIONERS—REMEDIES FOR BREACH.

1. Where the commissioners of Hamilton county were authorized by an act of the legislature, to construct the necessary county buildings on the old court house lot, and such lot was large enough for a court house only; the commissioners made a contract to build the court house on such lot, and the jail on some other lot, with the sanction of the legislature. These contracts were valid, as to the court house and also as to the jail, on the happening of the condition expressed.

[Cited in McLean v. Commissioners Hamilton Co., Case No. 8,881.]

2. By constructing the court house on the old court house lot, they acted wisely, as accommodation was thereby afforded to more of the officers of the county, than any other plan could have given.

¹ [Reported by Hon. John McLean, Circuit Justice.]

3. The commissioners dismissed the contractors in about four months, after they commenced the work, without cause. This subjected the commissioners to an action for damages, for the work done and the materials furnished, also for the profits of the work had it been completed under the contract.

4. In such case, the cost of materials and of labor will be estimated as of the time the contract was broken up. The wrong doers cannot complain of this rule, as they put an end to the contract wrongfully and voluntarily.

5. The act of 1851 [49 Laws Ohio, 130] authorized the commissioners to make the contract which was made.

6. The expense of the buildings was left to the discretion of the commissioners, as they were to construct all the necessary county buildings, on such plans and of such materials as they might determine.

7. As the buildings were necessarily to be large and substantial, it may be presumed that they should be also ornamental. A fair contract being made, the decision of the people by a popular vote, affords no justification for an abrogation of the contract by the commissioners. The result shows, that under the pretence of reform, the people are subjected to imposition and increased expense.

[The plaintiffs demurred to pleas interposed by defendants, and the demurrers were sustained, except that the question of the validity of the contract under the act of 1851 was left undecided, and by agreement the parties went to trial on the general issue, leaving the undecided point open for consideration thereon. Case No. 3,157.]

Fox, Stanbery & Pugh, for plaintiffs.
Caldwell, Groesbeck & Tilden, for defendants.

OPINION OF THE COURT. This action is brought on a contract between the parties, for the building of a court house and jail by the plaintiffs, for Hamilton county. The contract was dated the 15th of July, 1851, by which the plaintiffs agreed to build the court house and jail on the old court house lot, in Cincinnati. The jail to be built on another lot, should the consent of the legislature be obtained. The building was to be constructed according to the requisitions of plans and sections thereon, drawn by J. Rogers, architect, which plans, sections and specifications, are referred to and made a part of the contract. These plans were numbered from one to seventeen. The work to be done under the direction and superintendence of the architect. For the construction of the court house, the defendants agreed to pay the sum of four hundred sixty-eight thousand, seven hundred thirty-two dollars and fifty-five cents. And for the building of the jail, the sum of two hundred twenty-six thousand, five hundred twenty dollars and seventy-four cents. It was stipulated that the buildings should be commenced immediately, and prosecuted with all reasonable speed, and that they should be completed and ready for use, by the 1st of May, 1855. On the 4th of November, 1851, less than four months after the work was commenced, the contractors

were dismissed by the defendants, no special cause for the dismissal being assigned, and this action is brought to recover damages against the defendants for breaking up the contract. The defendants pleaded several special pleas, to which the plaintiffs demurred, and which demurrers were sustained by the court. 6 McLean, 112 [Cook v. Hamilton Co., Case No. 3,157]. It was, however, agreed by the parties, that the case should be tried on its merits, on the general issue, each party having the right to give in evidence any matter which might be pleaded.

On the evidence being offered to the jury, a question was raised at what time the price of the materials should be proved, necessary to' complete the work, and also the price of labor. The court held that the proof must be limited to the time the plaintiffs were discharged from the work. Whether the materials and labor were higher or lower after this period could not be shown, as affecting the merits of the case. The rights of the parties became fixed, on the wrongful dismissal of the plaintiffs, by the defendants. No other rule is practicable or certain; and the defendants cannot be heard to complain of hardship, as their own voluntary action fixed the rule of their liability. By the contract, the architect, Rogers, not only superintended the work, but he had power to dismiss the contractors. So far from being dissatisfied with the progress of the work, he states that there was no ground of complaint against them. In laying the foundation, for some defect in a part of the work, he directed it to be taken up and the defects remedied. He says, the work, so far as the plaintiffs were permitted to progress with it, was well and substantially done, and that they would have completed it, as he thinks, within the contract. Whatever pretences were set up by the defendants, in regard to the progress of the work, there was no ground connected with its progress, or the manner in which it was executed, which authorized the defendants to dismiss the contractors. Nor was there any reason for such a step, connected with the interest of the public. It is argued that the people decided against the contract, as extravagant and injurious to the public. That contracts should be submitted to a popular vote, after they have been solemnly entered into, or notice given, as the law required, is a new principle of constitutional law. It certainly affords no justification for breaking up the contract. The people, when left to their own unbiased judgment, will generally, if not always, decide matters submitted to them judiciously, but, under an excited canvass, the result depends upon the means used. A fit illustration of this is found in the case before us. The contract, it is said, was annulled, in obedience to the decision of the people of Hamilton county; and the consequence is, that the extravagant compensation complained of, will, probably, be in-

creased about one hundred per cent., and the buildings, when completed, will be inferior, in every respect, to the first plan.

When the sacredness of contracts, fairly entered into, shall be disregarded, under any pretence, there will be an end of all confidence and protection of persons or property. And where a contract is broken up without cause, it places the injured party on the same ground, in regard to an action for damages, as if he had performed the contract. The responsibility is thrown upon the wrong doer, and if he be a public agent, the public must suffer. Our government is founded upon the theory, that the people will protect their own interests, by electing to places of trusts, honest and capable men. The plaintiffs are entitled to compensation for the work done and the materials procured, at the time they were discharged from the contract. And they are entitled to damages, which shall cover the profits on the work, had it been completed. These are ascertained by estimating the cost of the materials under the contract, and the expense of construction. It appears the plaintiffs purchased a steam engine and derrick, which were necessary in placing the heavy materials in the building; but as these were retained by the plaintiffs, they cannot be charged against the defendants. For the work done by the plaintiffs and the materials procured, the amount can be ascertained from the evidence. In regard to the materials to complete the building, a question is made and argued, whether they shall be estimated, as the best that can be procured. The court house is designed to be a structure of large dimensions, and it was intended to be substantial and ornamental. The plans of the architect were to govern the contractors, and the jury, in assessing damages, will also be governed by them. And the materials to be used should be estimated as the best for the purpose intended. The price of the work will not be estimated by the old plan, of carrying the brick and mortar in the hod, but by the use of machinery to elevate, not only the brick and mortar, but the heavy materials required, by the contract, to be put into the building. By this mode the labor of many hands, formerly required, is dispensed with, which lessens the cost of construction.

The contract is alleged to be void, because it is impossible to perform it. The impossibility is supposed to arise from the requirement that the court house and jail shall be constructed on the same ground. The contract in regard to the jail is as follows: "It is further agreed that said court house and jail are to be erected on the old court house lot, corner of Main and Court streets, now in use, as at present understood; but should the commissioners of Hamilton county, at the next session of the legislature, obtain permission to build the said jail in the rear or adjoining the said court house lot, or on any

other lot in Cincinnati, east of Main street and west of Broadway, and south of Fourteenth street, then and in that case the said party of the second part agrees to erect and build said jail in the rear of or adjoining to said court house, or on any other lot in the above limits, without any additional charge." An act was passed the 20th April, 1852 [50 Local Laws Ohio, 4], which declared, "that the county commissioners of Hamilton county are hereby authorised and empowered, in the erection of public buildings, as heretofore by any law provided for, to proceed with the erection of the same, either by contract or otherwise, as in their opinion the public interest may require." This does not meet the above condition, nor was it intended for that purpose. It is supposed to have been intended to carry out the reform required by the vote of the people, by enabling the agents of their choice to construct the buildings under their own superintendence, without inviting bids, by public notice, for the performance of the work. Another act was passed the 14th of March, 1853 [51 Laws Ohio, 541], which is entitled an act to provide for the purchase of property and the erection of a work house in Hamilton county. And the act carries out the intention expressed in the title. Not a word is said in it about the building of a jail. Neither this act nor the one above cited, authorized the construction of a jail, within the contract, on which this action is founded. The action is not brought to recover damages, on the special ground, that the commissioners made no effort to procure the passage of a law authorizing the jail to be constructed on any other lot within the limits specified. The contract was not for the construction of a court house and jail on the same ground. Seeing that the court house covered the entire lot, provision was made to build the jail on some other lot, should the legislature authorize the same. This is not a contract against law, as upon its face it is to be binding only, on the condition that the law-making power shall sanction it. Such a contract is legal and binding on the parties, on the condition stated. Without the legislative sanction, the contract, in regard to the jail is not binding, and as no action of the legislature has been had as contemplated by the contract, the plaintiffs cannot recover damages, under the contract to build the jail.

But it is insisted that the commissioners had no authority to make the contract. The principle is admitted, that the powers of the commissioners are limited by the laws. The act of 1851 [supra], is entitled, "An act to authorize the commissioners of Hamilton county, to erect public buildings." The 4th section provides, "That Richard K. Cox, John Patten, and David A. Black, commissioners of Hamilton county, and their successors in office, be and they are hereby authorized and empowered, to erect all such suitable and necessary buildings for the said county, upon the same place or lot of ground which is now known as the old court house property, in the city of Cincinnati, upon such plan and of such materials as to them shall be deemed proper." This power is ample. The plan and materials are to be determined by the commissioners. The 4th section declares, "That the commissioners and their successors shall have power to appoint a superintendent of such buildings, &c., and shall make such necessary arrangements and contracts for the work and materials to be furnished for said public buildings, and require the faithful performance of all contracts in relation to the same." Proposals for the work were required to be invited and notice given. The powers conferred on the commissioners were full and complete, and required no prior law to be consulted. The 9th section declared, "if there be any thing, in any prior act, inconsistent with these provisions, it is repealed." A subsequent section authorizes the commissioners to borrow two hundred thousand dollars, and to provide the means of paying it, by a tax on property within the county. This power to tax is in addition to the power of taxation in any general act. The second section in the act of 1848 [46 Laws Ohio, 266] declares the commissioners shall not incur any expenditure exceeding fifty dollars, without public notice, &c. And the third section provides, "That the commissioners shall not enter into any contract to build any poor house, or any other public building, which requires an expenditure of more than five thousand dollars, without first submitting, as to the policy of such outlay, to the qualified voters of the county at the annual spring or fall election, by giving public notice, &c. And all contracts in violation of this section shall be void, as against the county." The 4th section authorizes the commissioners to lay a tax on the county levies, sufficient to pay the outstanding debts of the county, existing at the time such tax is laid. And the 5th section authorizes the commissioners to lay a tax, &c., and in the close of this section the following provision is made: "And said commissioners are by law authorized to levy taxes to pay all and every item within each current year, for which said commissioners are by law authorized to levy taxes, provided that such law is not to apply to loans made."

It is argued that the above contract is void, because it is contrary to public policy. It is not contrary to, but promotive of, the provisions of the act of 1851, except as to the place where the jail is to be built; and before the contract was to take effect a modification of the law, in this respect, was to be procured. The contract rests upon the act of 1851, and upon no prior statute. For the ordinary business of the county the general statutes, regulating the powers and duties of the commissioners, were sufficient. But county buildings being contemplated, new powers were necessarily conferred on the commissioners, not only to make contracts

and borrow money, but also to impose a tax annually which should meet current expenditures. This was done by the above act. The act did not specify a court house and jail, but authorized the commissioners to erect "all such suitable and necessary buildings for the said county, upon the old court house lot, &c. Finding that the lot afforded space enough for a court house only, the commissioners wisely determined to build the court house on the lot specified; and to ask the authority of the legislature to construct the jail on another lot. By doing this they made a larger and better provision for the county officers, and the courts, than any other plan could have given. Almost all the county offices, numerous as they are, will be accommodated in this building, to the great convenience of the officers and of those who have business with them.

The contract is alleged to be void because the expenditure incurred by it, greatly exceeded the sum which the commissioners were authorized to borrow. The commissioners must have known, and every intelligent man in the county, that the county buildings for this great city and densely populated county, could not be built for two hundred thousand dollars. And looking at the act, it is clear that a large expenditure was anticipated, as new powers were given to the commissioners to tax so as to meet the annual expenditures. Where a public contract is of such magnitude as to require five years for its completion, no wise government will appropriate at once an amount of money, which shall meet the entire expenditure.

Having noticed the principal objections made to the validity of the contract, I will make a few remarks on the testimony. A great number of witnesses, gentlemen of the jury, have been sworn, as measurers of the work and as experts; and as usual in such cases, many of them differ widely in their estimates. It is proper that I should say, that the engineer, Mr. Rogers, was employed by the commissioners to make an estimate of the work and superintend the construction of the building. He made a plan of the entire building, called the "working plan," and from which his estimates were made for the commissioners, before a contract was made with the plaintiffs. When this work was done he could have had no motive, but to sustain his professional character for accuracy and taste. Mr. Rogers also drew a general plan of the building, showing its outlines and general appearance. From the proportions thus delineated, the experts called by the defendants made their estimates. The first item of limestone in the walls of the building, McLaughlin & Baily estimate the cost at thirteen thousand dollars, while Rogers estimates it at seventeen thousand, eight hundred and twenty dollars. The lat-

ter sum being stated by the plaintiff's witness, and being higher in amount than defendants' witnesses, it would seem to be entitled to greater weight, as Rogers had the best opportunity of making an accurate estimate. The same remark applies to the brick work, which is estimated by Rogers at thirty-four thousand, nine hundred and seventy-five dollars, while the sum stated by Johnson and Morris was about twenty thousand dollars. The sheet iron roofing, Mr. Rogers sets down at eleven thousand, nine hundred and eighty-three dollars, which is not objected to by defendants. The same may be said of the plastering, which Rogers states at seven thousand and twenty-four dollars. The carpenter's work is estimated by Byefield at twenty-three thousand, three hundred and seventy-six dollars, whilst Rogers puts the cost at eighteen thousand, six hundred and twenty-nine dollars. You must decide between these estimates, by taking the one or the other, or by making an average, as you may think the evidence requires. The bill for plumbing is set down by Rogers, at three thousand dollars, whilst Gibson and Borrowly estimate it at more than three times that amount. Mr. Rogers does not profess to be acquainted with that work, and admits that his opinion respecting it is not to be relied on. Rogers estimates the painting and glazing at eight thousand four hundred and forty-seven dollars, whilst Hasbaugh, a professed painter and glazier, estimates the cost at ten thousand six hundred and eighteen dollars. The heating apparatus is estimated by Byefield, at thirteen thousand nine hundred and forty-seven dollars; whilst Rogers puts down the sum of six thousand dollars. Rogers estimates the cut stone at two hundred and eight thousand three hundred and sixteen dollars, and this is taken by both parties. The iron is estimated by the same witness, at one hundred and twenty-three thousand dollars. Mr. Rogers says that the prices at which he made the estimate would have given to the plaintiffs, on both buildings, a profit of fifty thousand dollars. No estimates have been proved in regard to the jail, as the contract for that building was not sanctioned by the legislature, consequently it cannot be considered as a valid contract. You will compare, gentlemen, the estimated cost of the building, with the contract price, and taking into view the profit on the court house, as may appear to be just, and from the sum thus made up, you will deduct the amount received by plaintiffs, after deducting from such amount the value of the materials furnished by the plaintiffs, and the work done by them on the foundation.

The jury found for the plaintiffs and assessed damages in their favor, amounting to the sum of forty-five thousand dollars. Judgment.